1  JAMES SHIELDS BEASLEY, ESQ.
   Nevada Bar No. 1733
2  Law Offices of James Shields Beasley
   435 Court Street
3  P.O. Box 2936
   Reno, Nevada 89505
4  Telephone:  (775) 329-6852
   Facsimile:  (775) 329-2174
5
   Attorney for Plaintiffs Yosef L. Mustafanos
6  and Shirley Jean Clifton

7

8                 **UNITED STATES DISTRICT COURT**

9            **DISTRICT OF NEVADA, NORTHERN DIVISION**

10
    YOSEF L. MUSTAFANOS and    )
11  SHIRLEY JEAN CLIFTON by    )    Civil Action No. _____
    and through YOSEF L.       )
12  MUSTAFANOS, her legally    )
    appointed guardian,        )
13                             )    **COMPLAINT AND DEMAND**
             Plaintiffs,       )    **FOR JURY TRIAL**
14                             )
             vs.               )    (Deprivation of Constitutional Right to be Free
15                             )    from Unreasonable Search and Seizure in
    LYON COUNTY, GREGORY       )    violation of 42 U.S.C. 1983; Deprivation of
16  KANTZ, DEBORAH JUNE        )    Constitutional Right to Substantive Due
    STRODE, LAURA DEPAOLI,     )    Process of Law under Color of State Law in
17  ANDREW STRODE, EDWARD      )    Violation of 42 U.S.C. § 1983; Deprivation of
    ANDERSON, and DOES 1-10,   )    Constitutional Right to be Free from
18  inclusive,                 )    Unreasonable Search and Seizure in violation
             Defendants        )    of Article 1, § 18 of the Nevada State
19                             )    Constitution; Deprivation of Property without
                               )    Due Process of Law in violation of Article 1, §
20                             )    8(5) of the Nevada State Constitution;
                               )    Trespass; Conversion; Conspiracy; Intentional
21  _____)    Infliction of Emotional Distress)

22        Plaintiffs Yosef L. Mustafanos and Shirley Jean Clifton, by and through their

23  attorney, James Shields Beasley, for their Complaint against defendants Lyon County,

24  Gregory Kantz, Deborah June Strode, Laura DePaoli, Andrew Strode, Edward

25  Anderson, and defendant DOES 1 through 10, inclusive, allege and aver as follows:

26                        **GENERAL ALLEGATIONS**

27                                  **I**

28        This is an action for deprivation of constitutional rights under color of state law

1  brought by plaintiffs Yosef L. Mustafanos and Shirley Jean Clifton pursuant to the

2  recodification Section 1979 of the Civil Rights Act of 1971, Title 42 United States

3  Code, Sections 1983 and 1988, for remedies for defendants' deprivation of plaintiff's

4  civil rights.    Plaintiffs Yosef L. Mustafanos and Shirley Jean Clifton allege that

5  defendants Gregory Kantz and Does 1-2, inclusive, while acting in the scope of their

6  employment for defendant Lyon County and under the color of state law, conspired to

7  perform and did perform with defendants Deborah June Strode, Laura DePaoli,

8  Andrew Strode, Edward Anderson and DOES 3-10, inclusive, an unlawful civil

9  standby which resulted in an unreasonable search and seizure of plaintiffs' property in

10  violation of the Fourth Amendment to the United States Constitution.  Plaintiffs also

11  maintain that defendants Gregory Kantz and DOES 1-2, inclusive, while acting in the

12  scope of their employment with defendant Lyon County and under the color of state

13  law, together with defendants Deborah June Strode, Laura DePaoli, Andrew Strode,

14  Edward Anderson, and DOES 3-10, inclusive, deprived plaintiffs of their property

15  without due process of law in violation of the Fourteenth Amendment to the United

16  States Constitution.

17       In addition, by this action, plaintiffs Yosef L. Mustafanos and Shirley Jean

18  Clifton assert claims against defendants Gregory Kantz, Deborah June Strode, Laura

19  DePaoli, Andrew Strode, Edward Anderson and DOES 1-10, inclusive, based upon

20  State law, to wit: Deprivation of Constitutional right to be free from Unreasonable

21  Search and Seizure in violation of Article 1, § 18 of the Nevada State Constitution,

22  Trespass, Conversion, Conspiracy, and Intentional Infliction of Emotional Distress.

23       This action is also brought against Lyon County for its failure to properly train

24  and supervise defendants Gregory Kantz and DOES 1-2, inclusive, in the proper

25  performance of a civil standbys, and its establishment of policies, procedures,

26  practices, and customs regarding the performance of civil standbys that result in

27  unreasonable searches and seizures in violation of the Fourth and Fourteenth

28  Amendments to the United States Constitution.

## II

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367, and venue is properly set in the United States District Court for the Northern District of Nevada pursuant to 28 U.S.C. § 1391.

2.    The causes of action alleged herein arise from factual allegations occurring in this judicial district.

3.    Plaintiff is informed and believes and based thereon alleges that each of the named Defendants resides in this judicial district.

## III

## PARTIES

**A.   Plaintiff**

4.    Plaintiffs Yosef L. Mustafanos and Shirley Jean Clifton are, and at all times mentioned herein were, residents of Silver Springs, Lyon County, Nevada, residing at 5400 Railroad Street, Silver Springs, Nevada.

5.    On or about August 13, 2012, plaintiff Yosef L. Mustafanos was appointed as the guardian of the person and estate of his disabled sister, plaintiff Shirley Jean Clifton, in the Carson City District Court.

6.    Plaintiff Shirley Jean Clifton is a disabled Army veteran.

**B.   Defendants**

7.    At all times herein mentioned, defendant Lyon County was, and now is, a County duly organized and existing under the laws of the State of Nevada.

8.    Plaintiff is informed and believes and based thereon alleges that defendants Gregory Kantz and DOES 1-2, inclusive, are, and at all times herein mentioned were, residents of Lyon County, Nevada, and employees of defendant Lyon County, working in the patrol division of the Lyon County Sheriff's Department.  In doing the things hereinafter described, defendants Gregory Kantz and DOES 1-2, inclusive, acted within the course and scope of their employment with the Lyon County

1   Sheriff's Department and Lyon County.  Defendant Lyon County is, therefore, liable
2   to plaintiffs for the acts of defendants Gregory Kantz and DOES 1-2, inclusive, as
3   hereinafter alleged in the First through Sixth Claims for Relief of plaintiffs' Complaint.
4   Further, in doing all of the things hereinafter mentioned, defendants Lyon County, by
5   and through the actions of its employees who assisted in the execution of the civil
6   standbys hereinafter referred to, and Gregory Kantz acted under color of the statutes,
7   ordinances, regulations, customs and usages of the State of Nevada and the County of
8   Lyon, and pursuant to the official policy of defendant Lyon County, as created by the
9   Lyon County Sheriff's Department, acting under color of its authority as such.

10        9.    Plaintiffs are informed and believe and based thereon allege that
11   defendant Deborah June Strode is, and at all times herein mentioned was, a resident of
12   Lyon County, Nevada.

13        10.   On December 5, 2009, plaintiff Yosef L. Mustafanos and defendant
14   Deborah June Strode were married; and ever since that date have been husband and
15   wife.  There is presently pending in the Lyon County District Court an action for the
16   dissolution of their marriage.

17        11.   Plaintiffs are informed and believe and based thereon allege that
18   defendants Laura DePaoli, Edward Anderson, and DOES 1-10, inclusive, are, and at
19   all times herein mentioned were, residents of Lyon County, Nevada.

20        12.   Plaintiffs are informed and believe and based thereon allege that
21   defendant Andrew Strode is, and at all times herein mentioned was, a resident of
22   Washoe County, Nevada.

23        13.   Plaintiffs are ignorant of the true names and capacities of defendants sued
24   herein as DOES 1-10, inclusive, and therefore sue these defendants by such fictitious
25   names.  Plaintiffs will amend this Complaint to allege their true names and capacities
26   when ascertained.  Plaintiffs are informed and believe and based thereon allege that
27   each of the fictitiously-named defendants is responsible in some manner for the
28   occurrences herein alleged, and that plaintiffs' injuries as herein alleged were

4

1  proximately caused by the actions of said fictitiously-named defendants.

2       14.   Plaintiffs are informed and believe, and based thereon allege, that at all
3  times herein mentioned each of the defendants sued herein as DOES 1-10, inclusive,
4  was the agent and employee of each of the remaining defendants and was at all times
5  acting within the purpose and scope of such agency and employment.

6       15.   Plaintiffs are informed and believe, and based thereon allege, that at the
7  time of the occurrences described in this Complaint, it was the custom and practice of
8  the Lyon County Sheriff's Department to allow its officers (1) to perform civil
9  standbys and to affirmatively affect the repossession of property in the possession of
10  third parties on behalf of private parties without the necessity of a court order allowing
11  the same; (2) to perform warrantless entries into private homes for the purpose of
12  affirmatively facilitating and encouraging unreasonable searches and seizures
13  performed by private persons; and (3) to affirmatively intervene to aid private parties
14  in repossessing property where the ownership of the property being repossessed is in
15  dispute and repossession would not occur, but for the assistance and authority
16  exhibited by Lyon County officers in assisting private parties to take possession of the
17  property.

18       16.   Since January 1, 1990, plaintiff Yosef L. Mustafanos has been involved
19  in the transportation business as a long-haul semi-tractor truck operator; and since
20  approximately May 2005, he has been the owner of certain 1991 Western Star, model
21  4964F, semi-tractor truck, VIN 3MK927998, as well as the owner of other transport
22  vehicles.

23       17.   In or about August 2011, plaintiff Yosef L. Mustafanos and defendant
24  Deborah June Strode decided that it would be to their mutual benefit if they were to
25  form a trucking business which would be owned and operated as a woman-owned
26  business.  Both plaintiff Yosef L. Mustafanos and Deborah June Strode believed that,
27  by establishing a woman-owned trucking business, they would be able to more easily
28  obtain contracts for the leasing of their trucks with one or more of the larger trucking

5

1   companies which had already obtained their ICC and DOT Authority.  Both plaintiff
2   Yosef L. Mustafanos and defendant Deborah June Strode intended that they would
3   continue to operate as a woman-owned business, leasing out their trucks to a larger
4   trucking company until their operations were profitable and they were in a financial
5   position to obtain their own ICC and DOT Authority, thereby enabling them to carry
6   on business as a common carrier on their own, and not as a lessee.

7         18.   In or about August 2011, plaintiff Yosef L. Mustafanos and defendant
8   Deborah June Strode entered into an agreement for the purpose of facilitating their
9   being able to lease their trucks to Mercer Transportation, a larger trucking company
10   which had already obtained its ICC and DOT Authority.  Pursuant to this agreement,
11   plaintiff Yosef L. Mustafanos agreed to transfer that certain 1991 Western Star, model
12   4964F, semi-tractor truck, VIN 3MK927998, which plaintiff Yosef L. Mustafanos had
13   owned since May 2005, to the woman-owned trucking business which defendant
14   Deborah June Strode would form and operate under the fictitious name and style of A
15   and O Enterprise.

16         19.   On or about August 24, 2011, pursuant to that agreement reached by
17   plaintiff Yosef L. Mustafanos and defendant Deborah June Strode, defendant Deborah
18   June Strode filed a Certificate of Business--Fictitious Firm Name with the Lyon County
19   Recorder, showing that she was doing business under the fictitious name and style of
20   A and O Enterprise.

21         20.   In or about August 2011, pursuant to that agreement reached by plaintiff
22   Yosef L. Mustafanos and defendant Deborah June Strode, plaintiff Yosef L.
23   Mustafanos transferred title to the 1991 Western Star, model 4964F, semi-tractor truck,
24   VIN 3MK927998, which he had owned since May 2005 to defendant Deborah June
25   Strode, doing business as a woman-owned business under the fictitious name and style
26   of A and O Enterprise.   The sole purpose of this transfer was to enable A and O
27   Enterprise to enter into a truck leasing contract first with Mercer Transportation, and
28   then with CRST-Malone.

1     21.   In forming the woman-owned trucking business known as A and O

2 Enterprise, defendant Deborah June Strode knew, understood and had agreed that the

3 true owner of the 1991 Western Star, model 4964F, semi-tractor truck, VIN

4 3MK927998, was plaintiff Yosef L. Mustafanos, and that she would transfer title to

5 that semi-tractor truck back to plaintiff Yosef L. Mustafanos upon the occurrence of

6 the earlier of two events. Those two events were (1) when plaintiff Yosef L.

7 Mustafanos and defendant Deborah June Strode were able to obtain their own ICC and

8 DOT Authority to operate as a common carrier; and (2) when A and O Enterprise could

9 no longer operate on a profitable basis and had ceased its operations.

10     22.   In transferring title to that certain 1991 Western Star, model 4964F, semi-

11 tractor truck, VIN 3MK927998, which he had owned since May 2005 to defendant

12 Deborah June Strode doing business as A and O Enterprise, plaintiff Yosef L.

13 Mustafanos also knew, understood and had agreed that, although title to the vehicle

14 was being placed in the name of A and O Enterprise, defendant Deborah June Strode

15 would immediately transfer title to the 1991 Western Star, model 4964F, semi-tractor

16 truck, VIN 3MK927998, back to plaintiff Yosef L. Mustafanos at such time as plaintiff

17 Yosef L. Mustafanos and defendant Deborah June Strode were able to obtain their own

18 ICC and DOT Authority to operate as a common carrier, or at such time that A and O

19 Enterprise could no longer operate on a profitable basis and had ceased its operations,

20 whichever event was first to occur.

21     23.   Two years later, as of August 2013, A and O Enterprise had failed as a

22 business, was deeply in debt and was losing money. Consequently, it was decided by

23 plaintiff Yosef L. Mustafanos and defendant Deborah June Strode that A and O

24 Enterprise would cease operations and that Deborah June Strode would transfer title

25 to the 1991 Western Star, model 4964F, semi-tractor truck, VIN 3MK927998, back to

26 plaintiff Yosef L. Mustafanos. Pursuant to their earlier understanding and agreement,

27 on July 17, 2013, defendant Deborah June Strode gave to plaintiff Yosef L. Mustafanos

28 a Full Power of Attorney, for that certain 1991 Western Star, model 4964F, semi-

1   tractor truck, VIN 3MK927998, a copy of which is attached hereto as Exhibit "____."

2       24.     In executing a Full Power of Attorney in favor of plaintiff Yosef L.

3   Mustafanos for that certain 1991 Western Star, model 4964F, semi-tractor truck, VIN

4   3MK927998, on July 17, 2013, Deborah June Strode knew, understood, agreed and

5   intended that the Full Power of Attorney would enable plaintiff Yosef L. Mustafanos

6   to execute a Certificate of Title which would transfer title to the 1991 Western Star,

7   model 4964F, semi-tractor truck, VIN 3MK927998, back to plaintiff Yosef L.

8   Mustafanos.

9       25.     On August 3, 2013, by his execution of a Certificate of Title which was

10  witnessed by defendant Deborah June Strode, plaintiff  Yosef L. Mustafanos

11  understood that he had transferred title to the 1991 Western Star, model 4964F, semi-

12  tractor truck, VIN 3MK927998, to plaintiff Yosef L. Mustafanos and Lyon of Judah,

13  as joint tenants.

14      26.     At the time plaintiff Yosef L. Mustafanos executed the Certificate of

15  Title which he understood would transfer title to the 1991 Western Star, model 4964F,

16  semi-tractor truck, VIN 3MK927998, to plaintiff Yosef L. Mustafanos and Lyon of

17  Judah as joint tenants defendant Deborah June Strode knew, understood and was fully

18  aware that plaintiff Yosef L. Mustafanos was not intending to submit the executed

19  Certificate of Title to the Nevada Department of Motor Vehicles until sometime in

20  April 2014 because it was not until April of 2014 that plaintiff Yosef L. Mustafanos

21  intended to once again start driving for CRST-Malone.

22      27.     On February 4, 2014, early in the morning and without any advance

23  notice, defendant Deborah June Strode left the house in which plaintiff Yosef L.

24  Mustafanos and defendant Deborah June Strode were then residing.

25      28.     On the following day, to wit: February 5, 2014, defendant Deborah

26  June Strode returned to the house located at 5400 Railroad Street, Silver Springs,

27  Nevada, at about 2:00 o'clock in the afternoon, accompanied by a deputy sheriff with

28  the Lyon County Sheriff's Department, deputy sheriff S. Haas.  Defendant Deborah

1  June Strode and deputy sheriff Haus entered the house and called out the name of
2  plaintiff Yosef L. Mustafanos.  Upon hearing his name called out, plaintiff Yosef L.
3  Mustafanos went into the living room of the house where he observed defendant
4  Deborah June Strode and deputy sheriff Haus standing.  Deputy sheriff Haas had her
5  hand on her firearm.  Plaintiff Yosef L. Mustafanos immediately asked defendant
6  Deborah June Strode why she was there with the deputy sheriff and whether or not she
7  was leaving him.  Defendant Deborah June Strode did not respond directly to plaintiff
8  Yosef L. Mustafanos's inquiry, but only said that "You'll find out."  Defendant
9  Deborah June Strode, however, did ask plaintiff Yosef L. Mustafanos to give her the
10 extra key which he had for the 1991 Western Star, model 4964F, semi-tractor truck,
11 VIN 3MK927998, as well as the spare key to her car.  Plaintiff Yosef L. Mustafanos
12 gave defendant Deborah June Strode the extra key to the semi-tractor truck, as well as
13 the spare key to her car.  Both defendant Deborah June Strode and deputy sheriff S.
14 Haas then left the house.  Plaintiffs Yosef L. Mustafanos and Shirley Jean Clifton are
15 informed and believe and based thereon allege that defendant Deborah June Strode did
16 not return to the house until September 14, 2014.

17      29.   Plaintiffs are informed and believe and based thereon allege that on or
18 about February 5, 2014, unbeknownst to plaintiff Yosef L. Mustafanos and contrary
19 to the understanding and agreement previously reached by plaintiff Yosef L.
20 Mustafanos and defendant Deborah June Strode, defendant Deborah June Strode went
21 to the Department of Motor Vehicles where she once worked and filled out a form
22 claiming that she had lost the original title to the 1991 Western Star, model 4964F,
23 semi-tractor truck.  Based upon this false representation, the Nevada Department of
24 Motor Vehicles issued to defendant Yosef L. Mustafanos a new original title to the
25 1991 Western Star, model 4964F, semi-tractor truck, thereby negating the Certificate
26 of Title which plaintiff Yosef L. Mustafanos had executed and which defendant
27 Deborah June Strode had witnessed on August 3, 2013.

28      30.   Plaintiffs are informed and believe and based thereon allege that

9

1   defendants Deborah June Strode, Gregory Kantz, Laura DePaoli, Andrew Strode and
2   DOE 3 met with one another on the morning of September 14, 2014, at the Lahontan
3   Market on Fir Avenue in Silver Springs and conspired with one another for the purpose
4   of enabling defendant Deborah June Strode to gain unfettered entrance into the house
5   located at 5400 Railroad Street to harass plaintiffs Yosef L. Mustafanos and Shirley
6   Jean Clifton and to seize possession of property which legally belonged to plaintiffs.

7          31.   On September 14, 2014, at approximately 8:00 a.m., without the benefit
8   of any civil standby order or other court order, defendants Deborah June Strode,
9   Gregory Kantz, Laura DePaoli, Andrew Strode and DOE 3 came to the house located
10  at 5400 Railroad Street with three (3) pick-up trucks and one (1) trailer. Upon arriving
11  at the house in which plaintiffs Yosef L. Mustafanos, Shirley Jean Clifton and their
12  brother James Marshall were then sleeping, plaintiffs are informed and believe and
13  based thereon allege that defendant Deborah June Strode knocked on the front door.
14   When someone from inside the house did not immediately respond to the knocking on
15  the door, defendant Deborah June Strode asked defendant Gregory Kantz for his
16  authorization to throw a brick through the window of the bedroom where plaintiff
17  Shirley Jean Clifton was then sleeping.   Defendant Gregory Kantz responded to
18  defendant Deborah June Strode's request for his permission to throw a brick through
19  the window of plaintiff Shirley Jean Clifton's bedroom by giving encouragement to
20  defendant Deborah June Strode and telling defendant Deborah June Strode "It's your
21  house, you can break whatever you want."

22         32.   Upon receiving defendant Gregory Kantz's encouragement and
23  authorization, defendant Deborah June Strode threw a brick through the window of the
24  bedroom in which plaintiff Shirley Jean Clifton was then sleeping, causing her to be
25  awakened by the sound of breaking glass and also causing her to be fearful for her life
26  and personal safety.

27         33.   Upon hearing the knocking which was taking place at his front door,
28  plaintiff Yosef L. Mustafanos put on his pants, slippers and "T" shirt and proceeded

towards the front door, intent on answering the door.   While proceeding towards the front door, plaintiff Yosef L. Mustafanos heard the sound of breaking glass coming from the bedroom of his sister, plaintiff Shirley Jean Clifton.

34.   When plaintiff Yosef L. Mustafanos got to the front door, he opened it and saw defendant Gregory Kantz standing in front of him with his hand on his firearm.  He also observed defendant Deborah June Strode breaking out the remaining particles of glass which were in the window of plaintiff Shirley Jean Clifton's bedroom.   Upon seeing that defendant Deborah June Strode had broken out the window in his sister's bedroom, plaintiff Yosef L. Mustafanos asked defendant Gregory Kantz and Deborah June Strode, "Who is going to be responsible for replacing the glass window?"   Defendant Deborah June Strode immediately responded by saying "It's my house too.  I can break all of the windows out and you can't do anything about it."   Defendant Gregory Kantz repeated the same words to plaintiff Yosef L. Mustafanos, telling him that defendant Deborah June Strode could break anything she wanted because she was also on title to the house.

35.   Upon receiving this explanation, plaintiff Yosef L. Mustafanos asked defendant Deborah June Strode, "Why didn't you throw a brick through my window?", defendant Deborah June Strode responded, saying, "I hate that crippled bitch and I want her out of my house."

36.   Still standing in front of plaintiff Yosef L. Mustafanos, defendant Gregory Kantz then ordered plaintiff Yosef L. Mustafanos to step aside and let defendants Deborah June Strode, Laura DePaoli, Andrew Strode and DOE 3 into the house.  With this last order, defendant Deborah June Strode stated that she owns everything in the house and that plaintiff Yosef L. Mustafanos owns nothing. Plaintiff Yosef L. Mustafanos objected to defendant Deborah June Strode's claim, stating that it was not true, and that "You are not going to remove my personal property."   When plaintiff Yosef L. Mustafanos indicated that he was not going to allow defendants Deborah June Strode, Laura DePaoli, Andrew Strode and DOE 3 to take any of his

11

personal property, defendant Gregory Kantz conspicuously placed his hand on his firearm once again and unsnapped its holster snap, stating to plaintiff Yosef L. Mustafanos, "You will step aside, or I will place you under arrest."  Plaintiff Yosef L. Mustafanos understood both defendant Gregory Kantz's actions and his statements to be a threat from defendant Gregory Kantz not to interfere with defendant Deborah June Strode's and her companions' efforts to obtain possession of property which was in the house.

37.    Due to defendant Gregory Kantz's threatening behavior, plaintiff Yosef Mustafanos did not physically prevent defendants Deborah June Strode, Laura DePaoli, Andrew Strode or DOE 3 from coming into the house.

38.    Upon entering into the house, defendant Deborah June Strode told defendants Andrew Strode and DOE 3 to go into plaintiff Shirley Jean Clifton's bedroom, directing them to "go and get my blankets off the Bitch" and "dump all of plaintiff Shirley Jean Clifton's belongings on the floor."  Defendants Andrew Strode and DOE 3 complied with defendant Deborah June Strode's directions.  They stripped from plaintiff Shirley Jean Clifton the blankets which were covering her and exposed her in her underclothes.

39.    Defendant Gregory Kantz also entered into the house and sat at the kitchen table.   Upon doing so, defendant Gregory Kantz told plaintiffs Yosef L. Mustafanos that defendant Deborah June Strode "can take whatever she wants.  You just have to sue her to get your items back."

40.    Defendants Deborah June Strode, Laura DePaoli, Andrew Strode and DOE 3 went through each room in the house, taking basically anything that defendant Deborah June Strode wanted and trashing the bedrooms in which plaintiff Shirley Jean Clifton and James Marshall had been sleeping.   Among the items which defendants Deborah June Strode, Laura DePaoli, Andrew Strode and DOE 3 seized and carried away were items in which plaintiff Yosef L. Mustafanos had a community property interest.   These items consisted of a (1) chest of drawers, (2) dresser, (3) stand-alone

full body mirror and wood frame, (4) two bedroom table lamps, (5) picture of an old man praying, (6) large wall clock, (7) small wall clock, (8) three candy dishes, (9) four bedroom lamps, (10) living room lamp, (11) white DVD cabinet, (12) vacuum cleaner, (13) two china hutches, (14) two glass Pyrex baking pans, (15) five eagle statues, (16) DVD movies, (17) three comforters, (18) eight bath towels, hand towels, wash clothes, (19) one glass end table, (20) one ceramic pitcher and wash basin bowl, (21) one living room mirror, (22) a French Provincial hall table and (23) one Mossberg 12 guage shotgun.

41.   At approximately 10:15 a.m. of September 14, 2014, defendants Deborah June Strode, Laura DePaoli, Andrew Strode and DOE 3 had removed what they could from the house.  At that time, defendant Gregory Kantz informed the defendants that they could not take anything else from the house because he had to then leave to take care of another matter.   He also told them that they would have to leave the house. However, in doing so, defendant Gregory Kantz told the defendants that they could remove whatever they wanted from the personal property which had been stored in the outside shed.

42.   After defendant Gregory Kantz had gone, defendants Deborah June Strode, Laura DePaoli, Andrew Strode and DOE 3 seized and carried away the following property in which plaintiff Yosef L. Mustafanos had a community property interest and which was stored in the outside storage shed: (1) two bar stools, (2) three oscillating pole fans, (3) round wood and glass coffee table, (4) one barbeque and (5) a 96 piece ceramic Rooster dinnerware and cannister set.

43.   Defendant Deborah June Strode, before leaving, apprized plaintiff Yosef L. Mustafanos that "We will be back anytime we want to and you can't stop us."

44.   After defendants Deborah June Strode, Gregory Kantz, Andrew Strode and DOE 3 left, plaintiff immediately telephone Undersheriff Albert Torres and explained what had happened and defendant Gregory Kantz's participation in those events.   Undersheriff Albert Torres informed plaintiff Yosef L. Mustafanos that

1  defendant Gregory Kantz would no longer be permitted to come onto plaintiff Yosef
2  L. Mustafanos's property.

3      45.    On September 15, 2014, unbeknownst to plaintiff Yosef L. Mustafanos,
4  defendant Deborah June Strode filed an Application for a Temporary and/or Extended
5  Order for Protection against Domestic Violence in the Justice Court of Dayton
6  Township.  On the next day, to wit: September 16, 2014, the Dayton Justice Court
7  entered a Temporary Order for Protection Against Domestic Violence, a true copy of
8  which is attached hereto as Exhibit "1".  Pursuant to that Temporary Order for
9  Protection, the Dayton Justice Court provided for a civil standby order which
10  specifically provided that it:

11      "ALLOW(S) A CIVIL STANDBY WHILE APPLICANT
12      RETRIEVES JEWELRY, PAINTINGS, AND OTHER PERSONAL
13      ITEMS FROM ADVERSE PARTY'S ADDRESS LOCATED AT 5400
14      RAILROAD STREET SILVER SPRINGS NV 89429."

15  Plaintiff Yosef L. Mustafanos was served with that temporary protective order on or
16  about September 30, 2014.

17      46.    Several days after defendants Deborah June Strode, Gregory Kantz,
18  Andrew Strode and DOE 3 had left and while cleaning up the mess caused by said
19  defendants, plaintiffs Yosef L. Mustafanos and Shirley Jean Clifton ascertained that
20  defendant Deborah June Strode had left some of her belongings in the house.  Plaintiff
21  Yosef L. Mustafanos gathered together all of the defendant Deborah June Strode's
22  personal property which remained in the house, to wit: her shoes, clothes, paintings,
23  jewelry and jewelry box, and put these items in the outdoor storage shed which he
24  locked for their protection until such time that defendant Deborah June Strode could
25  return and pick them up.

26      47.    Approximately two weeks later, on October 4, 2014, defendants Deborah
27  June Strode and Gregory Kantz returned unannounced to the house located at 5400
28  Railroad Street, accompanied by 6-8 pick-up trucks with trailers attached.  Defendant

1  Gregory Kantz came to the front porch and knocked on the front door.  When plaintiff

2  Yosef L. Mustafanos opened the front door, he saw approximately ten (10) other

3  people standing on the porch with defendants Gregory Kantz and Deborah June Strode,

4  using cell phones and taking pictures. Upon opening the front door, defendant Gregory

5  Kantz ordered plaintiff Yosef L. Mustafanos "Unlock your Burglar Door and let

6  Deborah Strode and her friends into the house so that she could get her belongings.

7  If you don't open the door, you will be arrested."

8        48.    Because plaintiff Yosef L. Mustafanos had been told by Undersheriff

9  Albert Torres that defendant Gregory Kantz was not going to be allowed to come to

10  plaintiffs' residence located at 5400 Railroad Street, Silver Springs, Nevada following

11  the report which plaintiff Yosef L. Mustafanos had made of the incident which had

12  taken place on September 14, 2014, plaintiff Yosef L. Mustafanos stated to defendant

13  Gregory Kantz that he was not supposed to be at plaintiffs' property, closed the front

14  door, and immediately placed a 911 call to the Lyon County Sheriff in which he

15  complained about the presence of defendant Gregory Kantz at his residence.   In that

16  911 telephone conversation, plaintiff Yosef L. Mustafanos was informed that, despite

17  his complaint that defendant Gregory Kantz was not supposed to be on plaintiff's

18  property, plaintiff Yosef L. Mustafanos would have to work through defendant

19  Gregory Kantz because defendant Gregory Kantz was then on the property.

20  Consequently, plaintiff Yosef L. Mustafanos went back and opened the front door.

21        49.    When plaintiff Yosef L. Mustafanos opened the front door, defendant

22  Gregory Kantz was no longer on the porch, but was instead just emerging from his

23  sheriff's vehicle. Plaintiffs are informed and believe and based thereon allege that

24  defendant Gregory Kantz had just finished up on a telephone conversation with the

25  same person with whom plaintiff Yosef L. Mustafanos had been talking on the 911

26  call. Plaintiff Yosef L. Mustafanos got defendant Gregory Kantz's attention.

27  Defendant Gregory walked towards plaintiff Yosef L. Mustafanos with a copy of what

28  plaintiff Yosef L. Mustafanos understood was the temporary protective Order in his

hand, telling plaintiff Yosef L. Mustafanos that he was going to charge him with abusing the 911 telephone line.  Defendant Gregory Kantz then asked plaintiff Yosef L. Mustafanos, "Whether he was going to deny defendant Deborah June Strode access to the home in order to get her belongings?"

50.    Out of fear for his own safety and that of his sister and, further, because plaintiff Yosef L. Mustafanos was aware that the temporary protective Order which defendant Deborah June Strode had obtained on September 15, 2014 did not specifically give defendant Deborah June Strode the right to enter the house, but only gave defendant Deborah June Strode the right to take possession of her jewelry, paintings and other personal items from the address located at 5400 Railroad Street, Silver Springs, Nevada, plaintiff Yosef L. Mustafanos did not open the security door to let defendant Deborah June Strode and her companions into the home.   Instead, plaintiff Yosef L. Mustafanos informed defendant Gregory Kantz that all of defendant Deborah June Strode's personal belongings had been placed by him in the outdoor storage shed under lock and key for their protection and that it was not necessary for defendant Deborah June Strode to enter into the house.

51.    While talking with defendant Gregory Kantz at the front door, and before anyone had asked plaintiff Yosef L. Mustafanos for the key to the storage shed lock, Yosef L. Mustafanos heard defendant Deborah June Strode and her companions breaking the outdoor storage shed lock with a sledge hammer.   Plaintiff Yosef L. Mustafanos walked away from the front door.   At about this same time, defendant Gregory Kantz asked plaintiff Yosef L. Mustafanos for the keys to the fuel tank of the 1991 Western Star, model 4964F, semi-tractor truck, which plaintiff Yosef L. Mustafanos owned. Plaintiff Yosef L. Mustafanos refused defendant Gregory Kantz's request because the semi-tractor truck was owned by him, and not by defendant Deborah June Strode.   Defendant Gregory Kantz turned and walked to his sheriff's vehicle which he parked a distance from the house and then watched while defendants Deborah June Strode, Laura DePaoli and DOES 3-10 removed the property which had

1  been stored in the outside storage shed.

2      52.    Defendant Gregory Kantz then shouted to defendant Deborah June

3  Strode and all of her companions that "He's not going to let us in, so you can leave

4  now."   With this directive, a parade of six (6) pickup trucks, pulling trailers, drove

5  away empty.    Defendants Deborah June Strode, Laura DePaoli and DOES 3-10

6  remained with a pickup truck and continued to move property from the outdoor storage

7  shed.

8      53.    While defendants Deborah June Strode, Laura DePaoli and DOES 3-10

9  were removing property from the outdoor storage shed, plaintiff Yosef L. Mustafanos

10  heard the engine of his 1991 Western Star, model 4964F, semi-tractor truck, VIN

11  3MK927998, being started up.   Plaintiff Yosef L. Mustafanos immediately came out

12  onto the porch to see what was occurring, and observed that two of defendant Deborah

13  June Strode's companions, a husband and wife whose names plaintiffs do not know,

14  but who have been designated by the fictitious names DOE 4 and DOE 5 in this

15  Complaint, were loading the semi-tractor truck with items which had been taken out

16  of the outdoor storage shed.   While plaintiff Yosef L. Mustafanos was having a very

17  general conversation with DOE 4 and DOE 5, and asking them what they thought they

18  were doing, defendant Gregory Kantz drove his vehicle up to the two individuals, one

19  of whom was then driving the semi-tractor truck, and told them not to have any

20  discussions with the plaintiff Yosef L. Mustafanos, but instead to just drive away,

21  which defendants DOE 4 and 5 did.   Defendants' pickup truck and plaintiff Yosef L.

22  Mustafanos's semi-tractor truck were loaded not only with furniture, appliances,

23  clothes, jewelry and linens, but also with plaintiff Yosef L. Mustafanos's personal tools

24  of trade and equipment which were seized and driven off of the property.

25      54.    Plaintiff Yosef L. Mustafanos did not make any attempt to prevent

26  defendant Deborah June Strode and her companions from seizing his semi-tractor

27  truck, his personal tools of trade which were in that truck, and his personal belongings

28  which had been removed from the outdoor storage shed because of his fear that he

1  would be arrested and/or personally harmed by defendant Gregory Kantz.

2      55.    On October 4, 2014, defendants Deborah June Strode, Laura DePaoli,

3  Andrew Strode, and DOES 3-10 personally seized and took away with them tools and

4  equipment of plaintiff Yosef L. Mustafanos which were valued at $11,600.00, as well

5  as plaintiff Yosef L. Mustafanos's 1991 Western Star, model 4964F, semi-tractor truck,

6  VIN 3MK927998, valued at $50,000.

7      56.    Plaintiffs are informed and believe and based thereon allege that said

8  defendants with the assistance of defendant Edward Anderson have attempted to

9  conceal from plaintiff Yosef L. Mustafanos his 1991 Western Star, model 4964F, semi-

10 tractor truck, by hiding said truck behind defendant Edward Anderson's barn which

11 is located at 5035 Geraldine Avenue in Silver Springs, Nevada.

12                    **FIRST CLAIM FOR RELIEF**
                   (Deprivation of Rights Under Color of State Law)
13                        [42 U.S.C. §§ 1983, 1988]

14     57.    Plaintiffs refer to paragraphs 1 through 56 of their General Allegations

15 and incorporate the same herein by this reference.

16     58.    Plaintiffs are informed and believe, and based thereon allege, that the law

17 enforcement officers who were in charge of the Lyon County Sheriff's Department

18 implicitly or explicitly adopted and implemented careless and reckless policies,

19 customs, or practices which, among other things, allowed deputy sheriffs in the employ

20 of the Lyon County Sheriff's Department to (1) perform civil standbys and

21 affirmatively affect the repossession of property in the possession of third parties on

22 behalf of private parties without the necessity of a court order allowing the same; (2)

23 to perform warrantless entries into private homes for the purpose of affirmatively

24 facilitating and encouraging unreasonable searches and seizures performed by private

25 persons; and (3) to affirmatively intervene to aid private parties in repossessing

26 property where the ownership of the property being repossessed is in dispute and

27 repossession would not occur, but for the assistance, control and coercive authority

28 exhibited by the Lyon County officers in assisting private parties to take possession of

18

1  the property.

2        59.    Plaintiffs are also informed and believe, and based thereon allege, that the

3  law enforcement officers who were in charge of the Lyon County Sheriff's Department

4  failed to train its deputy sheriffs in the proper manner to handle civil standbys and

5  acted with deliberate indifference to the rights of third parties to be free from

6  unreasonable seizures.

7        60.    Plaintiffs are informed and believe, and based thereon allege, that it was

8  the long-standing practice and custom of the Lyon County Sheriff's Department to

9  allow its deputy sheriffs to violate the constitutional rights of third parties which are

10  guaranteed by the Fourth and Fourteenth Amendments to the United States

11  Constitution (1) by performing civil standbys and affirmatively affecting the

12  repossession of property in the possession of third parties on behalf of private parties

13  without the necessity of a court order allowing the same; (2) by performing warrantless

14  entries into private homes for the purpose of affirmatively facilitating and encouraging

15  unreasonable searches and seizures performed by private persons; and (3) by

16  affirmatively intervening to aid private parties in repossessing property where the

17  ownership of the property being repossessed is in dispute and repossession would not

18  occur, but for the assistance, control and authority exhibited by the Lyon County

19  deputy sheriffs in assisting private parties to take possession of the property.

20        61.    The failure of the Lyon County Sheriff's department to adequately train

21  and supervise its deputy sheriff's in the proper performance of civil standbys amounts

22  to deliberate indifference to the rights of plaintiffs to be free from unreasonable

23  seizures under the Fourth and Fourteenth Amendments to the United States

24  Constitution.

25        62.    As a result of this deliberate indifference to the rights of plaintiffs,

26  plaintiffs have suffered the loss of their property through defendants' unconstitutional

27  seizure of that property, the loss of income growing out of the inability of plaintiff

28  Yosef L. Mustafanos to engage in the business of a contract truck driver due to the

19

1  seizure of his semi-tractor truck by defendants, and personal injuries in the form of the

2  emotional distress and suffering which defendants caused to plaintiff Shirley Jean

3  Clifton when they broke the window of her bedroom on September 14, 2014, stripped

4  her of her blankets, and trashed her bedroom.

5      63.   In committing the acts complained of herein, defendants acted under color

6  of state law to deprive plaintiffs of certain constitutionally protected rights, including,

7  but not limited to: (1) the right to be free from unreasonable searches and seizures; and

8  (2) the right not to be deprived of property without due process of law.

9      64.   By reason of defendant Gregory Kantz's conduct described hereinabove,

10  and the failure of those persons in charge of the Lyon County Sheriff's Department to

11  properly train and supervise its deputy sheriffs in the proper performance of civil

12  standbys, the constitutional rights of plaintiffs to be free from unreasonable searches

13  and seizures which is guaranteed by the Fourth Amendment to the United States

14  Constitution, as well as the constitutional right of plaintiffs not to be deprived of their

15  property without due process of law which is guaranteed by the Fourteenth

16  Amendment to the United States Constitution, have been violated.

17                          **SECOND CLAIM FOR RELIEF**
                 (Deprivation of Civil Rights in Violation of State Law)
18                         [Nev.Const. Art. 1, § 8(5), § 18]

19      65.   Plaintiffs refer to paragraphs 1 through 56 of their General Allegations

20  and incorporate the same herein by this reference.

21      66.   By reason of defendants' conduct, plaintiffs were deprived of rights,

22  privileges, and immunities secured to them by the Nevada State Constitution,

23  specifically Article 1, § 8(5), which provides that

24          "No person shall be deprived of life, liberty, or property, without

25          due process of law.",

26  and Article 1, § 18, which reads:

27          **"Unreasonable seizure and search; issuance of warrants.**  The

28          right of the people to be secure in their persons, houses, papers and effects

20

1  against unreasonable seizures and searches shall not be violated. . . .",

2  in that the actions of defendant Gregory Kantz and, on the theory of respondeat

3  superior, Lyon County were not only unlawful, but said actions also amounted to

4  unreasonable searches and seizures of property which belonged to plaintiffs Yosef L.

5  Mustafanos and Shirley Jean Clifton, as well as an unlawful deprivation of plaintiffs'

6  property without due process of law.

7      67.   As a proximate result of defendants' actions against plaintiffs Yosef L.

8  Mustafanos and Shirley Jean Clifton, as alleged above, plaintiffs have suffered the loss

9  of their property through defendants' unconstitutional seizure of that property, the loss

10  of income growing out of the inability of plaintiff Yosef L. Mustafanos to engage in

11  the business of a contract truck driver due to the seizure of his semi-tractor truck by

12  defendants, and personal injuries in the form of the emotional distress and suffering

13  which defendants caused to plaintiff Shirley Jean Clifton when they broke the window

14  of her bedroom on September 14, 2014, stripped her of her blankets, and trashed her

15  bedroom.

16      68.   In committing the acts complained of herein, defendants acted under color

17  of state law to deprive plaintiffs of certain constitutionally protected rights, including,

18  but not limited to: (1) the right to be free from unreasonable searches and seizures; and

19  (2) the right not to be deprived of property without due process of law.

20      69.   By reason of defendant Gregory Kantz's conduct described hereinabove,

21  and the failure of those persons in charge of the Lyon County Sheriff's Department to

22  properly train and supervise its deputy sheriffs in the proper performance of civil

23  standbys, the constitutional rights of plaintiffs to be free from unreasonable searches

24  and seizures which are guaranteed by § 18 of Article 1 of the Nevada State

25  Constitution, as well as the constitutional rights of plaintiffs not to be deprived of their

26  property without due process of law which are guaranteed by § 8(5) of the Nevada

27  State Constitution, have been violated.

28      70.   The above-recited actions of defendants in depriving plaintiffs Yosef L.

1  Mustafanos and Shirley Jean Clifton of their constitutionally protected rights were
2  done with evil motive and intent, or with reckless or callous indifference to plaintiffs'
3  rights.

**THIRD CLAIM FOR RELIEF**

(Trespass to Real and Personal Property)

6      71.    Plaintiffs refer to paragraphs 1 through 56 of their General Allegations
7  and incorporate the same herein by this reference.

8      72.    On or about September 14, 2014, and October 4, 2014, defendants and
9  each of them without plaintiffs' consent entered the above described property, i.e.,
10  5400 Railroad Street, Silver Springs, Nevada.

11     73.    In addition, on September 14, 2014, and October 4, 2014, defendants and
12  each of them, without plaintiffs' consent, seized, took possession of, and carried away
13  property which belonged to plaintiffs, specifically including, but not limited to those
14  personal tools and equipment which belonged to plaintiff Yosef L. Mustafanos and
15  which were valued at $11, 600.00, and that certain 1991 Western Star, model 4964F,
16  semi-tractor truck, VIN 3MK927998, which was owned by plaintiff Yosef L.
17  Mustafanos and which was valued at $50,000.00.

18     74.    In seizing, taking possession of, and carrying away plaintiff Yosef L.
19  Mustafanos's 1991 Western Star, model 4964F, semi-tractor truck, VIN 3MK927998,
20  plaintiff Yosef L. Mustafanos is informed and believes and based thereon alleges that
21  defendants damaged the gearing mechanism of said semi-tractor truck, thereby
22  rendering it unable to be driven.  Plaintiffs do not presently know the full extent of the
23  damage which has been done to said semi-tractor truck, but when plaintiffs ascertain
24  the cost which will be involved in repairing said semi-tractor truck, plaintiffs will
25  amend this Complaint for the purpose of inserting the same.

26     75.    As a proximate result of defendants' action in seizing, taking possession
27  of, and carrying away plaintiff Yosef L. Mustafanos's 1991 Western Star, model
28  4964F, semi-tractor truck, VIN 3MK927998, and the damage which has been done to

1  said semi-tractor truck, plaintiff Yosef L. Mustafanos has also lost income and profits

2  by not having the use of said semi-tractor truck in his truck transport business.

3  Plaintiffs do not presently know the full extent of the income and profits which

4  plaintiff Yosef L. Mustafanos has suffered as a result of his having been deprived of

5  the use of said semi-tractor truck, but when plaintiffs ascertain the full extent of those

6  lost profits and income, plaintiffs will amend this Complaint for the purpose of

7  inserting the same.

8      76.    The aforementioned acts of the defendants were willful, oppressive,

9  fraudulent and malicious.   Therefore, plaintiffs are entitled to an award of punitive

10  damages.

11  **FOURTH CLAIM FOR RELIEF**

12  (Conversion of Personal Property)

13      77.    Plaintiffs refer to paragraphs 1 through 56 of their General Allegations

14  and incorporate the same herein by this reference.

15      78.    At all times herein mentioned, and in particular on or about September

16  14, 2014 and October 4, 2014, plaintiffs were, and still are the owners of that personal

17  property described hereinabove, and were, are still are, entitled to the possession of

18  said personal property.

19      79.    On or about September 14, 2014, the property of plaintiffs Yosef L.

20  Mustafanos and Shirley Jean Clifton which defendants unlawfully seized, took

21  possession of and carried away, thereby converting the same to their own use and

22  benefit, had a value in excess of $10,000.00.

23      80.    On or about October 4, 2014, the property of plaintiff Yosef L.

24  Mustafanos which defendants unlawfully seized, took possession of and carried away,

25  thereby converting the same to their own use and benefit, i.e., his personal tools,

26  equipment and the 1991 Western Star, model 4964F, semi-tractor truck, VIN

27  3MK927998, had a value in excess of $61,600.00.

28      81.    As a proximate result of defendants' action in converting plaintiff Yosef

L. Mustafanos's 1991 Western Star, model 4964F, semi-tractor truck, VIN 3MK927998, to their own use and benefit, plaintiff Yosef L. Mustafanos has lost income and profits by not having the use of said semi-tractor truck in his truck transport business. Plaintiffs do not presently know the full extent of the income and profits which plaintiff Yosef L. Mustafanos has suffered as a result of defendants' conversion of said semi-tractor truck, but when plaintiffs ascertain the full extent of those lost profits and income, plaintiffs will amend this Complaint for the purpose of inserting the same.

82.    Between the time of defendants' conversion of the above-named property to their own use, plaintiffs have expended time and money in pursuit of the converted property, all to plaintiff's further damage in excess of the sum of $10,000.00.

83.    The aforementioned acts of defendants, and each of them, were willful, wanton, malicious, oppressive, and were undertaken with the intent to defraud plaintiffs, and justify the awarding of exemplary and punitive damages.

## FIFTH CLAIM FOR RELIEF

### (Conspiracy)

84.    Plaintiffs refer to paragraphs 1 through 56 of their General Allegations and incorporate the same herein by this reference.

85.    Defendants Gregory Kantz, Deborah June Strode, Laura DePaoli, Andrew Strode, and DOES 3-10 did the acts and things herein alleged pursuant to, and in furtherance of , the conspiracy and above-alleged agreement.

86.    Defendant Edward Anderson furthered the conspiracy by cooperating with and lending aid and encouragement to the acts of defendants Deborah June Strode, Laura DePaoli, Andrew Strode and DOES 3-10, in that defendant Edward Anderson has attempted to conceal the whereabouts of the 1991 Western Star, model 4964F, semi-tractor truck, VIN 3MK927998, owned by plaintiff Yosef L. Mustafanos; and once the whereabouts of the 1991 Western Star, model 4964F, semi-tractor truck, VIN 3MK927998, was learned by plaintiffs, i.e., hidden behind defendant Edward

1 | Anderson's barn, defendant Edward Anderson has refused to turn over possession of

2 | said semi-tractor truck to plaintiffs, and in fact has obtained a temporary protective

3 | order which prevents plaintiff Yosef L. Mustafanos from coming onto his property to

4 | retrieve the same.

5 | 87.    Plaintiffs are informed and believe and based upon information belief

6 | allege that the conspiracy among defendants originated on o,r about February 5, 2014,

7 | and that the conspiracy continues on until the present date.

8 | 88.    In doing the things herein alleged, defendants acted with malice,

9 | oppression and fraud, that is, with the intent to cause plaintiffs injury; and, therefore,

10 | plaintiffs are entitled to an award of punitive or exemplary damages.

11 | **SIXTH CLAIM FOR RELIEF**

12 | (Intentional Infliction of Emotional Distress)

13 | 89.    Plaintiff Shirley Jean Clifton refers to paragraphs 1 through 56 of

14 | plaintiffs' General Allegations and paragraphs 83 through 87 of the Fifth Claim for

15 | Relief, and incorporates the same herein by this reference.

16 | 90.    The conduct of defendants Gregory Kantz, Deborah June Strode, Laura

17 | DePaoli, Andrew Strode and DOE 3, in breaking the bedroom window of plaintiff

18 | Shirley Jean Clifton, stripping her of the blankets which covered her in her bed, taking

19 | her possession, and trashing her bedroom was intentional and malicious and done for

20 | the purpose of causing plaintiff Shirley Jean Clifton to suffer humiliation, mental

21 | anguish, and emotional and physical distress, and done with a wanton and reckless

22 | disregard of the consequences to plaintiff Shirley Jean Clifton.

23 | 91.    As a proximate result of defendants' actions against plaintiff Shirley

24 | Jean Clifton, as alleged above, plaintiff Shirley Jean Clifton has been harmed in that

25 | she was subjected to abuse, humiliation and indignity, and has suffered great mental,

26 | emotional and nervous pain and suffering, all to her damage in an amount according

27 | to proof.

28 | 92.    The above-recited conduct of defendants was willful and malicious and

25

1  was intended to oppress and cause injury to plaintiff Shirley Jean Clifton.   Therefore,

2  plaintiff Shirley Jean Clifton is entitled to an award of punitive damages.

3       WHEREFORE, each of the plaintiffs request judgment against defendants, and

4  each of them, as follows:

5       1.       For general damages in an amount according to proof;

6       2.       For punitive damages in an amount appropriate to punish defendants for

7  their wrongful conduct and set an example for others;

8       3.       For reasonable attorney's fees pursuant to Title 42 of the United States

9  Code, Section 1988;

10      4.       For costs of suit herein incurred; and

11      5.       For such other and further relief as the Court deems just and proper in

12  the premises.

13      DATED this 23rd day of April, 2015.

14                          LAW OFFICE OF JAMES SHIELDS BEASLEY
                            Attorney for Plaintiffs
15                          435 Court Street
                            P.O. Box 2936
16                          Reno, Nevada  89505

17                          By _____
18                              JAMES SHIELDS BEASLEY

19

20                          **DEMAND FOR JURY TRIAL**

21      Plaintiffs in the above-entitled action request a trial by jury as provided by

22  Amendment VII of the United States Constitution and by Rule 38 of the Federal Rules

23  of Civil Procedure.

24                          _____
                            JAMES SHIELDS BEASLEY
25
                            Attorney for Plaintiffs Yosef L. Mustafanos
26                          and Shirley Jean Clifton

27                          Telephone: (775) 329-6852
                            Fax No.:    (775) 329-2174
28                          Email:      jimbeasleyesq@gmail.com

1

<b>VERIFICATION</b>

2   I, Yosef L. Mustafanos, declare:

3   I am one of the plaintiffs in the above-entitled action.  I have read the foregoing

4   Complaint and Demand for Jury Trial and know the contents thereof.  The same is true

5   of my own knowledge, except as to those matters which are alleged on information and

6   belief, and as to those matters, I believe it to be true.

7   I declare under penalty of perjury under the laws of the State of Nevada that the

8   foregoing is true and correct.

9   DATED this _23rd_ day of April, 2015, at Reno, Nevada.

10

11

12   YOSEF L. MUSTAFANOS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27